Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff Wang

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHONGMIN WANG, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | CASE No.: |
| | CLASS ACTION |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| ARROWHEAD RESEARCH CORPORATION, CHRISTOPHER R. ANZALONE, AND BRUCE D. GIVEN | JURY TRIAL DEMANDED |
| Defendants. | |

Class Action Complaint for Violation of the Federal Securities Laws

Plaintiff Zhongmin Wang, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint the following upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, inter alia: (a) review and analysis of relevant filings made by Arrowhead Research Corporation ("Arrowhead" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Defendants' public documents, conference calls and press releases; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the Internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all persons and entities, other than Defendants, who purchased the common stock of Arrowhead during the period August 12, 2014 through October 8, 2014, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws (the "Class").

2.     Arrowhead is a biopharmaceutical company whose main business is developing RNA Interference ("RNAi") therapeutics. RNAi is a process by which the RNA molecules prevent gene expression and thereby destroys specific micro-RNA ("mRNA") molecules. Arrowhead's focus is to develop drugs that target the RNAi mechanism that will suppress disease-causing genes.

1

Class Action Complaint for Violation of the Federal Securities Laws

3.     ARC-520 (or the "Drug") is one of Arrowhead's main product and crucial to its business and operations.

4.     ARC-520 is an RNAi therapeutic that targets the hepatitis B virus for treating chronic hepatitis B. ARC-520 is currently being tested for its effectiveness in using RNAi to halt the production of hepatitis B genes, which will reduce the number of infectious hepatitis B particles.

5.     On October 8, 2013, the Company announced the completion of the Phase I study of ARC-520, which tested the drug in non-human primates such as chimpanzees, as well as mice and rats.

6.     On March 24, 2014, the Company announced the commencement of the Phase IIa study on ARC-520, which tested the drug in humans. The Phase IIa study examined the enrolled hepatitis B patients and assigned them randomly to either receive ARC-520, at doses of 1 mg/kg or 2 mg/kg or a placebo.

7.     The measure of effectiveness of the drug is to have a log reduction and duration of reduction of hepatitis B surface antigens ("HBsAG") which measure the presence of hepatitis B in the body.

8.     In the Phase I study of ARC-520 involving a chimpanzee infected with hepatitis B, the Company indicated that treatment with ARC-520 caused a 0.8 log reduction in HBsAG.

9.     On August 12, 2014, Defendants held a conference call to report on Q3 2014 earnings and the progress of the Phase IIa study. During this call, Defendants made materially false and misleading statements and/or failed to disclose the true viral reduction level that ARC-520 can induce in humans, suggesting that its viral reduction was similar to the chimpanzee result (0.8 log reduction) and closer to 1 log (90% reduction).

Class Action Complaint for Violation of the Federal Securities Laws

10.     On October 8, 2014, the Company announced the results of its Phase IIa study, revealing that ARC-520 dosed at 2 mg/kg only induced a 0.3 log reduction in HBsAG – far short of what Defendant previously suggested.

11.     On this news, the Company's stock fell $5.48 per share, or almost 44%, on extraordinary volume from its previous closing price to close at $7.03 per share on October 8, 2014.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

14.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

15.     In connection with the acts, conduct and other wrongs alleged herein, defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

16.     Plaintiff Zhongmin Wang purchased Arrowhead common stock during the Class Period and has suffered damages as set forth in the accompanying certification.

17.     Arrowhead is a Delaware Corporation headquartered in Pasadena, California.

Class Action Complaint for Violation of the Federal Securities Laws

18.     During the Class Period, Arrowhead's common stock was actively traded on the NASDAQ Global Select under the ticker symbol "ARWR."

19.     Defendant Christopher R. Anzalone ("Anzalone"), at all relevant times herein, was the Company's President and CEO.

20.     Defendant Bruce D. Given ("Given"), at all relevant times herein, was the Company's COO and Head of Research and Development.

21.     Anzalone and Given are collectively referred to hereinafter as the "Individual Defendants."

22.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(f)     approved or ratified these statements in violation of the federal securities laws.

23.     As officers, directors, and controlling persons of a publicly-held company whose common stock is and was registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ Global Select and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and to correct any previously-issued statements that

4

Class Action Complaint for Violation of the Federal Securities Laws

had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

24.     Arrowhead is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

25.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Arrowhead under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

26.     The Class Period begins on August 12, 2014 when the Company issued a press release providing an update on the Phase IIa study of ARC-520, which was also filed on Form 8-K with the SEC. The press release touted that the ARC-520 response in human hepatitis B patients was similar to the chimpanzee results, stating in relevant part:

ARC-520 Phase 2a Study Update

• Completed dosing of 1 mg/kg and 2 mg/kg dose cohorts

• ***Initial blinded data suggest that the magnitude of HBsAg knockdown is similar to non-human primate studies, including the chronically infected chimpanzee reported on previously***

• ***Duration of knockdown appears to be substantially more sustained than in non-human primates, with patients in the 2 mg/kg group still demonstrating substantial knockdown after 8 weeks, which is the most recent time point available***

• HBsAg levels appear to continue to decline in a number of patients at the 8 week time point in the 2 mg/kg group

Class Action Complaint for Violation of the Federal Securities Laws

• Based on initial review, dosing less frequent than once monthly will be explored in Phase 2b

• ARC-520 continues to be well tolerated, with no dropouts or serious adverse events reported

• The overall rate of AEs has been lower in the Phase 2a than in the Phase 1 normal volunteer study and safety labs continue to show no indication of end organ toxicity

• Enrolled and dosed additional subjects at 3 mg/kg in the still open normal volunteer study and the dose performed well, without detected differences from safety and tolerability results at the other doses. Overall AEs do not appear to be increasing in frequency or severity with dose

• Received IRB and DSMB approvals to proceed and began enrolling an additional dose cohort at 3 mg/kg in the Phase 2a patient study

(emphasis added)

27.     On that same day, Arrowhead held a conference call to discuss the Q3 2004 earnings results and the progress of the clinical data for the Phase IIa study of ARC-520 collected at that point. Both Individual Defendants were on the call.

28.     During the conference call, Defendant Anzalone made the following initial remarks concerning the PhaseIIa study, which touted the reduction ability of ARC-520 in humans:

As you know, earlier this year we initiated a dose finding Phase 2a study designed to inform a multi-dose Phase 2b study. ***Our two primary goals were to identify a dose that, A, induces a 90% reduction of circulating s-antigen after a single administration*** and B, provides durable enough knockdown to enable once per month dosing. ***Given our studies in multiple animal models, we were quite confident that we could achieve this, but just did not know what that dose would be in humans.***

Class Action Complaint for Violation of the Federal Securities Laws

Our interim results have been extremely exciting. ***We completed dosing of 1 and 2 milligrams per kilogram in June and those studies still blinded, several important conclusions may already be drawn. We are seeing clear knockdown in both groups and duration of that knockdown has been substantially longer than we expected.***

***We currently have data from the 2 milligrams per kilogram cohort as far out as two months after dosing and in these patients we perceive -- and in the patients we perceive as having received ARC-520, we still see substantial knockdown at this time point.***

29.    On the same call, Defendant Given made the following remarks expounding on the results and suggesting that the ARC-520 response in human hepatitis B patients was similar to the chimpanzee results:

We have surface antigen data for all patients into 2 mg per kg dose group through six weeks and for five of eight patient's we have data through eight weeks.

Again with the caveat that the data is still blinded we believe the knockdown is clearly deeper in this group versus 1 mg per kg and at eight weeks the patients we perceive is having received active drug so surprisingly large reductions in surface antigen.

***Overall, duration of knockdown appears to be substantially more sustained in humans compared to the non-human primates we have studied at the same doses. For the depth of knockdown appears to be similar in magnitude with what we see in non-human primates of same doses, including the HBV infected chimpanzee presented at AASLD last year.***

*****

So how should we think about these results? ***The dose range for knockdown in humans appears to be similar to that seen in non-human primates, including the previously reported HBV infected chimpanzee.***

(emphasis added)

7

Class Action Complaint for Violation of the Federal Securities Laws

30.     With regards to the ability of ARC-520 to achieve higher than a 0.8 log reduction, Defendant Anzalone had the following exchange with analyst Michael Yee of RBC Capital Markets expressing his confidence in achieving such reduction level:

> Michael Yee - RBC Capital Markets
> Yeah. Hi. Good afternoon. Thanks guys. A couple of questions, first on your ongoing Phase 2a study. You should have qualified 1 mg and 2 mg curves, ***people are implying that 2 mgs is around 0.8 log reduction like the animal study. But what is your confidence that 3mgs is going to be greater than 0.8.*** Are you just comparing that to the current time point and the drop you've seen in the time point in the 2 mgs. ***How confident are you that, that will be greater than a 1 mg -- excuse me, 1 log?***
>
> And then going forward, since we're trying to ultimately get functional here in the Phase 2b study, how confident are you in a functional cure if you're not above 1 log. And how many doses will you get and what time points are you looking at your -- to actually look at the functional cure?
>
> Dr. Christopher Anzalone - President and CEO
> Sure, I'll take a crack and I'll hand it over to Bruce as well. ***Regarding our confidence level in achieving the log knockdown with 3 mgs/kg, we feel pretty good about that. What we saw in one 2 mgs/kg is that the depths of knockdown seems to track reasonably well with non-human primate models.*** But of course the durability of the fact is, it's substantially longer. And so that that gives us -- that gives us good confidence that 3 mgs/kg will give us good deep knockdown.
>
> *****

(emphasis added)

31.     Defendant Anzalone also had the following exchange with analyst Alethia Young of Deutsche Bank expressing his confidence in ARC-520 achieving a 1-log reduction:

> Alethia Young - Deutsche Bank

Class Action Complaint for Violation of the Federal Securities Laws

Great, thanks for taking my question, and congrats on the progress. I just wanted to ask about the 1 log theory again. ***Do you still stand by the 1 log knockdown, if you're seeing a longer duration of response?*** And then the second question is, run us through like why you believe 1 log is irrelevant (indiscernible) time point period right now, when you're basically at maybe 0.8, 0.7 right now and then I have one quick follow-up.

Dr. Christopher Anzalone - President and CEO
Sure. It's good question. Thanks very much Alethia. We think that that is an aggressive bogie and it is not clear to what we actually need to reach that level of knockdown. Having said that ***we think that we can certainly get there so we're more comfortable if we have it.*** The reason that we have, we have stuck to that bogie, is that the only thing that gives any kind of (indiscernible) semi reliable functional cures is interferon. After a year of interferon, about 10% of patients will reach a functional sure and all those patients who do get to that functional cure will see about half a log reduction in s-antigen in around 12 weeks and around one log after 24 weeks.

*****

(emphasis added)

32.     These statements above were materially false and misleading when made because Defendants knew that the data from the Phase IIa study of ARC-520 did not support their assertion that ARC-520 would induce such reduction levels of HBsAG in humans.

## THE TRUTH EMERGES

33.     On October 8, 2014, Arrowhead issued a press release stating that the Company was presenting the data for its Phase IIa study on ARC-520 at the American Association for the Study of Liver Disease ("AASLD") meeting to be held on November 7-11, 2014.

34.     Along with this announcement, Arrowhead published a late-breaking abstract for the AASLD Meeting.   The abstract revealed that there was a 39%

9

reduction of the hepatitis B's HBsAG when a 1 mg/kg dose was administers and a 51% reduction of HBsAG when a 2 mg/kg dose was administered.

35.     As explained below, the 51% of HBsAG for the 2 mg/kg dose of ARC-520 equates to only a 0.3-log reduction – falling far short of the near 1-log reduction Defendants had previously suggested.

36.     On that same day, *TheStreet.com* published an article detailing the Company's disappointing results, which states:

> Arrowhead Research Sinks on Disappointing Hepatitis B Drug Data
> Adam Feuerstein
> 10/08/14 – 10:38 AM EDT
>
> Arrowhead Research (ARWR) shares were sliding hard on disappointing data from its experimental hepatitis B therapy ARC-520, released at 10 a.m. EST.
>
> **In an ongoing phase II study, ARC-520 dosed at 2 mg/kg induced a 0.3 log reduction in HBsAG, which is a measure of the presence of hepatitis B virus in the body. The observed treatment effect for ARC-520 at this dose is much lower than investors expected. When Arrowhead first announced results from this study in August, the company didn't provide specific numbers but hinted that the viral reduction was closer to (but not quite) 1 log. A 0.3-log reduction is nowhere close to 1-log reduction, which explains why Arrowhead stock is selling off.**
>
> Arrowhead shares were down 30% to $8.80.
>
> The specific data on ARC-520 disclosed this morning was contained in a late-breaker abstract for the American Association for the Study of Liver Disease (AASLD) annual meeting, which is being held in November.
>
> The phase II study of ARC-520 in hepatitis B patients is ongoing and Arrowhead is exploring higher doses of the drug, hoping to see a more robust effect. But results from higher doses of ARC-520 have not yet been announced.

10

Class Action Complaint for Violation of the Federal Securities Laws

Here is the nut graph from the ARC-520 AASLD late-breaker abstract which caused Arrowhead shares to sink:

> ARC-520 activity is assessed by measuring percent change of quantitative HBsAg decline from baseline. For patients receiving ARC-520 in cohort 1, mean nadir HBsAg was - 39% (range -22 to -57) with a mean change on day 85 of - 31% (range -14 to -39). For patients receiving ARC-520 in cohort 2, mean nadir HBsAg was - 51% (range -46 to -59) with a mean change on day 85 of -22% (range -7 to -40). For cohort 2, the percent reduction in HBsAg was statistically significant vs placebo for Days 3 through 43 post dose. This is the first time that a reduction in HBsAg mediated through RNA interference has been shown in chronic HBV patients.
>
> **There is a formula to convert percent change in quantitative HBsAg decline from baseline into a log reduction. The 51% reduction disclosed in the abstract for the 2 mg/kg dose of ARC-520 equates to a 0.3-log reduction.**

(emphasis added)

37.    Later that same day, *TheStreet.com* published another article further commenting on the Company's disappointing results, which states in relevant parts:

Blame Arrowhead Management Entirely for Today's Epic Collapse
Adam Feuerstein
10/08/14 – 3:52 PM EST

Lay all the blame for Arrowhead Research's (ARWR) spectacular hepatitis B implosion today at the feet of CEO Chris Anzalone and the rest of the company's management team.

All CEOs of publicly traded companies must manage investor expectations. For CEOs of early, development-stage biotech companies like Arrowhead, making sure Wall Street isn't delivered a nasty surprise is absolutely crucial. Credibility lost is very difficult to retrieve. Yet for some inexplicable reason, Anzalone totally botched the job.

11

**For months, Anzalone and his team knew ARC-520 dosed at 1 mg/kg and 2 mg/kg yielded 0.2-log and 0.3-log reductions in hepatitis B viral load. Publicly and privately, however, Arrowhead executives led investors to believe that ARC-520 was more potent, achieving viral load reductions in the range of 0.7 log or higher.**

Arrowhead could have been honest with investors about ARC-520's mediocre performance at the two lowest doses. The company could have told investors, "We're not where we want to be with ARC-520 dosing and viral load reductions yet, but we think we can get there soon at higher doses and here's why."

If Arrowhead had played fair and conservatively earlier this year, perhaps the stock price might not have reached $26 in March like it did. Maybe the company's valuation bump would have been more modest. But I'm also more certain Arrowhead wouldn't trade at a year low like it is now because investors were misled and are now pissed off.

I asked Arrowhead management to explain their actions but received no response.

*****

(emphasis added)

38.    Following this negative news, the Company's stock fell $5.48 per share, or almost 44%, on extraordinary volume from its previous closing price to close at $7.03 per share on October 8, 2014.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD ON THE MARKET DOCTRINE

39.    At all relevant times, the market for Arrowhead's common stock was an efficient market for the following reasons:

(a)    Arrowhead's stock met the requirements for listing, and was listed and actively traded on the NASDAQ Global Select, a highly efficient and automated national market;

12

(b)     As a regulated issuer, Arrowhead filed with the SEC periodic reports during the Class Period;

(c)     During the Class Period, Arrowhead was eligible to file short-form registration statements on Form S-3 with the SEC;

(d)     Arrowhead regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     Arrowhead was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period.  Each of these reports was publicly available and entered the public marketplace; and

(f)     Unexpected material news about Arrowhead was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

40.     As a result of the foregoing, the market for Arrowhead's common stock promptly digested current information regarding Arrowhead from all publicly available sources and reflected such information in Arrowhead's stock price.  Under these circumstances, all purchasers of Arrowhead's common stock during the Class Period suffered similar injury through their purchase of Arrowhead's common stock at artificially inflated prices, and a presumption of reliance applies.

**AFFILIATED UTE**

41.     Neither Plaintiff nor the Class need prove reliance – either individually or as a class because under the circumstances of this case, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court

in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).   All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

42.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of Arrowhead during the Class Period and who were damaged thereby.  Excluded from the Class are Defendants, the current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

43.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Arrowhead's common stock was actively traded on the NASDAQ Global Select. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by Arrowhead or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

44.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

45.    Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

14

46.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether the misstatements and omissions alleged herein were made with scienter;

(c)     whether statements made by the Individual Defendants to the investing   public during the Class Period misrepresented and/or omitted material facts about the business, prospects, and operations of Arrowhead; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

47.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act Against and Rule 10b-5
### <u>Promulgated Thereunder Against All Defendants</u>

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     This First Claim is asserted against all Defendants.

50.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1)

deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell Arrowhead common stock at artificially inflated and distorted prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

51.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Arrowhead as specified herein.

52.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct  as alleged herein in an effort to assure investors of Arrowhead's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Arrowhead and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Arrowhead's common stock during the Class Period.

53.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1)  Individual Defendants were high-level executives,  directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation,

development and reporting of the Company's financial condition; (3) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; (4) each of the Individual Defendants was aware of the Company's dissemination  of information to the investing public that they knew or recklessly disregarded was materially false and misleading; and (5) each of the Individual Defendants culpably participated in the wrongful conduct alleged herein.

54.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Arrowhead's financial condition and future business prospects from the investing public and supporting the artificially inflated or distorted price of its common stock.   As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition and business prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for Arrowhead's common stock was artificially inflated during the Class Period.   In ignorance of the fact that market prices of Arrowhead's publicly-traded common stock were artificially inflated or distorted, and relying directly or indirectly on the

Class Action Complaint for Violation of the Federal Securities Laws

false and misleading statements made by Defendants, or upon the integrity of the market in which the Company's common stock trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired and/or sold Arrowhead common stock during the Class Period at artificially high prices and were damaged thereby.

56.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Arrowhead's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Arrowhead common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

57.     By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

59.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

**SECOND CLAIM**
**Violation Of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

60.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.     This Second Claim is asserted against each of the Individual Defendants.

62.     The Individual Defendants acted as controlling persons of Arrowhead within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of  the Company's operations and/or intimate knowledge of aspects of the Company's revenues and earnings and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

63.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

64.     As set forth above, Arrowhead violated Section 10(b) and Rule 10b-5.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

65. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 10, 2014          Respectfully submitted,

                                 **THE ROSEN LAW FIRM, P.A.**

                                 /s/ Laurence Rosen
                                 Laurence M. Rosen, Esq. (SBN 219683)
                                 355 S. Grand Avenue, Suite 2450
                                 Los Angeles, CA 90071
                                 Telephone: (213) 785-2610
                                 Facsimile: (213) 226-4684
                                 Email: lrosen@rosenlegal.com

                                 Counsel for Plaintiff Wang

20

Class Action Complaint for Violation of the Federal Securities Laws

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Arrowhead Research Corp.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Arrowhead Research Corp.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

| | |
|---|---|
| **First name:** | Zhongmin |
| **Middle initial:** | |
| **Last name:** | Wang |
| **Address:** | REDACTED |
| **City:** | |
| **State:** | |
| **Zip:** | |
| **Country:** | |
| **Facsimile:** | |
| **Phone:** | |
| **Email:** | |

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 03/21/2014 | 1200 | 23.9890 |
| Common Stock | 03/26/2014 | 1000 | 23.0799 |
| Common Stock | 09/30/2014 | 2000 | 15.1958 |
| Common Stock | 10/02/2014 | 1000 | 14.9455 |
| Common Stock | 10/03/2014 | 1000 | 14.80 |
| Common Stock | 10/14/2014 | 1000 | 8.7999 |

**Certification for Zhongmin Wang (cont.)**

Sales:

| Type of Security | Sale Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 10/01/2014 | 1200 | 15.11 |

7.  I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate:        **YES**

By clicking on the button below, I intend to sign and execute this agreement and retain the Rosen Law Firm, P.A. to proceed on Plaintiff's behalf, on a contingent fee basis.        **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 10/09/2014